UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
MILLICENT LEWIS, DAVID LEWIS,
and JULIETTE STEVENS,

                      Plaintiffs,

    -against-                                **COMPLAINT**

CITY OF NEW YORK, and
JOHN and JANE DOES 1-6,
                                         **PLAINTIFFS DEMAND**
                      Defendants.       **A TRIAL BY JURY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

       Plaintiffs Millicent Lewis, David Lewis, and Juliette Stevens, by their attorneys, Lumer & Neville, as and for their Complaint, hereby allege as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

       1.    At all times hereinafter mentioned, plaintiffs were adult residents of Kings County, within the State of New York.

       2.    At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

       3.    At all times hereinafter mentioned, defendant John and Jane Does 1 through 6 were members of the NYPD and employed, retained, trained, and supervised by

New York City, whose individual identities are not presently known. The Doe defendants are sued herein in his official and individual capacities.

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

5. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where plaintiffs and defendant City of New York reside, and where the majority of actions complained of herein occurred.

**RELEVANT FACTS**

6. On November 8, 2013, at or between about 12:00 to 1:00 p.m., plaintiffs were lawfully present inside the basement apartment of 1932 Bergen Street (the "Premises").

7. Plaintiffs were present as invited guests of the tenant, who had just rented the Premises, and they were there that day to help clean and fix up the Premises.

8. At this time, the Doe defendants entered the Premises and began questioning plaintiffs.

9. The Doe defendants did not have a warrant that would authorize their entry into the Premises, nor was any such entry consented to by any of the people inside the Premises, nor was there any exigency that would permit the Doe defendants' entry into the Premises.

10. Although plaintiffs were lawfully present in the Premises, and were not

engaged in any illegal activity, and despite the absence of probable cause to arrest plaintiffs, or any reasonable basis to believe that probable cause to arrest plaintiffs existed, the Doe defendants seized, handcuffed, and arrested the plaintiffs.

11. The plaintiffs were eventually transported to a local area police precinct, where they were imprisoned against their will for a number of hours.

12. The defendants eventually issued criminal summonses to the plaintiffs, alleging that they were trespassing in the Premises in violation of New York Penal Law §140.05.

13. At no time were the plaintiffs trespassing in the Premises, and the defendants knew that there was no basis to arrest plaintiffs for trespass or cause them to be so charged.

14. On January 24, 2014, the summonses issued to plaintiffs Millicent Lewis and Juliette Stevens, 4410455347 and 4410455333 respectively, were summarily dismissed by Judge Hecht as legally insufficient.

15. On February 11, 2014, plaintiff David Lewis appeared before Judge Schwartzwald, where he agreed to an Adjournment in Contemplation of Dismissal.

16. At no time did defendants have probable cause to seize, detain or arrest any of the plaintiffs, nor was it reasonable for the defendants to believe that such cause existed.

17. Despite the absence of probable cause and lack of evidence of criminal conduct by any of the plaintiffs, the defendants proceeded with their arrest.

18. Although the arrest and imprisonment of the plaintiffs was facially unconstitutional, at no time did any of the defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the heretofore conduct engaged in by their fellow officers.

19. The defendants' actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

20. More precisely, under this policy or plan, members of the NYPD are expected to make certain monthly quotas, also known as "activity levels," with respect to arrests and criminal summonses regardless of whether such arrests and summonses were legally justifiable.

21. The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

22. In addition, patrol officers and other members of the NYPD are evaluated, in large part, on the basis of their "activity" which is measured by the number of arrests made and summonses issued, and other, similar criteria. Thus, members of the NYPD routinely make arrests and issue summonses without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

23. The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiffs' arrest, despite the municipal defendant's knowledge that the individuals arrested were not being charged or that there was insufficient evidence to justify

the arrests or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecuting offices often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

24. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

25. Plaintiffs repeat the allegations set forth above as though stated fully herein.

26. Defendants willfully and intentionally seized, searched, detained and arrested plaintiffs without probable cause, and without a reasonable basis to believe such cause existed.

27. By so doing, the individual defendants, individually and collectively, subjected the plaintiffs to false arrest and imprisonment, unlawful searches of person and property, excessive force, malicious prosecution, denial of a fair trial through the fabrication of evidence, and thereby violated and aided and abetted in the violation of plaintiffs' rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

28. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

29. Plaintiffs repeat the allegations set forth above as though stated fully herein.

30. The Doe defendants' entry into the Premises, arrest of the three plaintiffs, and subsequent actions, and failure to act, with respect to the criminal prosecutions of the plaintiffs, were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

31. The City of New York created, approved or condoned the practice and policy of maintaining quotas, whether identified as such or otherwise.

32. Under this policy, members of the NYPD are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, summonses issued, and other, similar criteria. Members of the NYPD routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

33. Moreover, the NYPD generally tracks the number of summonses issued and arrests made by each officer but does not take into account the outcome of these summonses arrests in evaluating its employees' job performance, even though this information is available to the NYPD. As a result, members of the NYPD are well aware that (a) they are being evaluated based on, in large part, the number of arrests made, and (b) their supervisors do not care whether these arrests lead to actual criminal prosecutions, much less

convictions.

34. More precisely, under this policy or plan, officers are encouraged or pressured to make as many arrests as possible, which has caused and will continue to cause, its officers, including the individual defendants and their colleagues, to make arrests regardless of whether there was any factual basis for the charges. The officer(s) would then fabricate claims of having seen the person(s) being arrested engaged in some unlawful or criminal activity.

35. The purpose of this policy or plan was to generate large numbers of arrests within the individual commands therein, in order to create a false or misleading impression of positive activity by their officers and satisfying internal quotas.

36. The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiffs' arrest, despite the municipal defendant's knowledge that county prosecutors were often not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecutors often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

37. Rather than take steps to abolish this plainly unconstitutional and unlawful police, the municipal defendant continued to tacitly endorse this policy of deliberate misconduct.

38. In an Order dated November 25, 2009, in Colon v. City of New York,

09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

39. It is also manifestly clear through the litigation brought in the Eastern and Southern Districts of New York that countless hundreds, if not thousands, of civilians have alleged that members of the NYPD have deliberately arrested them without probable cause. Thus, even if the municipal defendant was not the architect of the policy causing these unlawful arrests, they were certainly on notice of the practice.

40. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York, at the bare minimum, has been on notice was deliberately indifferent to the risk that the undue emphasis on arrest quotas, or minimum activity levels, particularly when coupled with a deliberately indifferent level of supervision, would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiffs' rights in particular.

41. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

    i.    on the first cause of action, actual and punitive damages in an amount to be determined at trial;

    ii.    on the second cause of action, actual damages in an amount to be determined at trial;

    iii.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

    iv.    such other relief as the Court deems just and proper.

Dated:  October 8, 2014
          New York, New York

                    LUMER & NEVILLE
                    Attorneys for Plaintiffs
                    225 Broadway, Suite 2700
                    New York, New York 10007
                    (212) 566-5060

By: *[signature]*
Michael B. Lumer (ML-1947)